**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

O.J. DISTRIBUTING, INC.,

      **Plaintiff,**                                **CIVIL ACTION NO. 98-CV-71940-DT**

vs.

                                             **DISTRICT JUDGE DENISE PAGE HOOD**

HORNELL BREWING CO. INC.,        **MAGISTRATE JUDGE MONA K. MAJZOUB**
a/k/a ARIZONA BEVERAGES,

      **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

**RECOMMENDATION**: Defendant's Motion for Summary Judgment should be **DENIED** because there are genuine issues of material fact.

\*\*\*

**I. BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff, a Michigan corporation, filed the instant action claiming that Defendant (a/k/a Arizona), a New York corporation, breached the terms of a "Distributing Agreement" ("Agreement") entered into by the parties on September 16, 1995. Under the terms of the Agreement, Plaintiff acquired the exclusive rights to distribute Arizona Beverages in certain geographical regions of Michigan. On April 22, 1997, Defendant sent Plaintiff a letter terminating the parties' Agreement. After lengthy negotiations, the parties were unable to reach an amicable settlement as to monies allegedly owed under the Agreement and Plaintiff commenced the instant action with this Court on May 11, 1998. On October 5, 1998, Defendant initiated arbitration proceedings before the American Arbitration Association in New York to which Plaintiff filed a motion for temporary restraining order to halt the arbitration proceedings from moving forward. Thereafter, Defendant filed a Motion to Dismiss and a Motion to Stay the Proceedings pending arbitration. In an Order dated April 2, 1999, the Court denied both Plaintiff's Motion for TRO

and Defendant's Motion to Dismiss and granted Defendant's Motion to Stay the Proceedings.

On or about March 30, 2000, the arbitrators issued their award dismissing Plaintiff's claims in their entirety. On May 5, 2000, Plaintiff filed an amended complaint with this Court following which Defendant filed a Motion to Dismiss and to confirm the arbitration award. Plaintiff responded with a Motion for Summary Judgment. On March 29, 2001, the Honorable Denise Page Hood issued a Memorandum Opinion and Order confirming the arbitration award and denying the remaining motions as moot. Plaintiff filed a timely appeal and on August 14, 2003, the Sixth Circuit Court of Appeals vacated the district court's Order dated March 29, 2001 and remanded the case for further proceedings. Specifically, the Sixth Circuit concluded that "[b]ecause Defendant waived its right to arbitrate, all of Plaintiff's claims should have been decided on the merits before the district court". *O.J. Distributing, Inc., v. Hornell Brewing Co.*, 340 F.3d 345 (6th Cir. 2003).

Upon remand, Plaintiff filed a Second Amended Complaint alleging, *inter alia*, breach of contract, unjust enrichment, tortious interference, conversion, fraud and misrepresentation, and civil conspiracy. On December 8, 2003, Defendant filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) claiming that (1) Plaintiff's claims were time barred; (2) Plaintiff's claim for unjust enrichment was without merit in light of the existence of an express contract; and (3) Plaintiff failed to state a claim upon which relief may be granted as to its claims of breach of contract, tortious interference, conversion, fraud, civil conspiracy, and economic loss. On September 30, 2004, Judge Hood issued a Memorandum Opinion and Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6). Specifically, the Court dismissed Plaintiff's claims of unjust enrichment, tortious interference, conversion, fraud, and civil conspiracy; however, the Court concluded that Plaintiff had stated viable claims for breach of contract. Finally, the Court rejected Defendant's argument that Plaintiff's claims were time barred based on the contractual language of the Agreement. Specific to the contractual

limitations issue, the Court held:

> Although the Sixth Circuit did not use the 'contractual statute of limitations' language, the Court found that the 180 day limitation had been waived, for purposes of filing an arbitration claim, as a result of Defendant's role in delaying the informal resolution of this matter for approximately fifteen months. Therefore, although the Court recognizes that one of the primary issues resolved by the Sixth Circuit was relative to whether there was a waiver of the right to arbitrate, that right was integrally related to the time frame in which enforcement of the arbitration provision was to take place. In kind, that same time frame is integrally related to the contract provision regarding the filing of a federal claim. Accordingly, the Court does not find that Plaintiff's Complaint should be dismissed based upon the expiration of the contractual statute of limitations.

(Memorandum Opinion and Order dated September 30, 2004, pg. 7). On March 7, 2005, Defendants filed a Motion for Summary Judgment claiming that Plaintiff's remaining contract claims should be dismissed as there are no genuine issues of material fact. Plaintiff filed its response to Defendant's motion on May 11, 2005 and Defendant filed a Reply (which exceeded the number of pages allowed by Local Rule) on May 18, 2005. The matter has been referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(B)(1)(b). The parties argued the motion on May 23, 2005.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©. The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* A mere scintilla of evidence is insufficient to defeat a supported motion for summary judgment; rather, "there must be evidence on which the jury could

reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the evidence itself need not be the sort admissible at trial, the evidence must be more than the non-movant's own pleadings and affidavits. *Ashbook v. Block*, 917 F.2d 918, 921 (6th Cir. 1990); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (explaining that the non-moving party may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact).

### III.  DISCUSSION AND ANALYSIS

In its Second Amended Complaint, Plaintiff asserts that Defendant terminated the Agreement without cause such that it was liable to Plaintiff for an amount to be calculated under the "No Cause Payment" clause of the Agreement.  Section 6C.3, which governs when the applicability of No Cause Payments, provides:

> 6C.3 The Manufacturer recognizes that the Distributor may have invested time and effort in developing distribution within the Territory during the term that is operated as a Distributor in accordance with this Agreement.  The parties have agreed that, only with respect to a No Cause Termination, the Manufacturer will make a payment to Distributor (the "No Cause Payment") in recognition of, <u>inter alia</u>, said time and effort.  Such No Cause Payment shall be based upon the number of cases of Exclusive Products sold by the Distributor during the twelve (12) month period ending on the last day of the month preceding the delivery of the No-Cause Notice (the "Formula Period").  Sales shall be determined by the number of cases depleted from Distributor's Inventory, less allowances and buy back returns.

(Plaintiff's Exhibit 5, pg. 12).  Defendant asserts that it had cause to terminate the Agreement such that Plaintiff is not entitled to the No Cause Payment under section 6C.3.  Specifically, Defendant alleges that Plaintiff violated the prohibition against assignment clause of the Agreement.  Specifically sections 19.1 and 19.2 provide:

> 19. 1 Distributor shall not transfer any of its rights or obligations under this Agreement without the prior written consent of Manufacturer, which

> consent may be withheld by Manufacturer in its sole discretion, it being understood that Manufacturer has a legitimate interest in the identity, qualifications, financial and marketing strength, etc., of its distributors.
>
> 19.2 For the purposes hereof, a transfer shall be deemed to include . . . (d) a transfer of any ownership interests in, affecting, or respecting the Distributor by reason of which (I) the persons owning the ownership interests of Distributor on the date hereof would own less than 67% of the aggregate ownership interests of the Distributor, or (ii) following the date hereof there shall have been transfers of ownership interests (even if among the present owners) representing more than 50% of the aggregate ownership interests of Distributor, or (iii) there shall have been a change in Control from that existing on the date hereof. Attached hereto as Schedule F is a list of all of the present owners or ownership interests in Distributor, together with the amount of their respective ownership interests. Without limiting the prohibition set forth herein, but instead to assure the Distributor's compliance with the provisions hereof, the Distributor shall notify the Manufacturer in writing of any anticipated changes in ownership interests applicable to Distributor . . .

(Plaintiff's Exhibit 5, pg. 28-29). Schedule F indicates that, as of the effective date of the Agreement, Plaintiff corporation was owned 51% by Meslem Bazzy and 49% by Alan Agemy. There is no dispute that following the execution of the Agreement, Bazzy bought out Agemy's 49% interest in O.J. Distributing upon which Bazzy became the sole owner of the company. Defendant contends that Plaintiff violated section 19.2(d)(I) when Bazzy bought out Agemy's 49% interest in the company while Plaintiff asserts that 19.2(d)(I) has no application to the instant facts. For the following reasons, the Court rejects Defendant's strained interpretation of section 19.2(d)(I) and agrees with Plaintiff that section 19.2(d)(I) is not applicable here.

Each subsection of section 19.2(d) deals with transfers of either controlling interest or control-in-fact of the company. Section 19.2(d)(I) ensures that the original signatories to the Agreement own at least 67% of the company following a transfer of interest. This provision protects Defendant, in the event of a transfer, from dealing with unknown third parties who may become responsible for marketing and distributing its products. Section 19.2(d)(ii) deals with transfers "(even if among the present owners)"

-5-

representing more than 50% of the aggregate ownership interests of Distributor. Again, section 19.2(d)(ii) ensures that individuals *other than those who were the owners* as of the effective date of the Agreement do not gain control of the distributorship. Section 19.2(d)(iii) deals expressly with changes in control of the distributorship without regard to percentage of ownership interest.

Seemingly, Defendant would argue that there has been a transfer under section 19.2(d)(I) where A owns 99%, B owns 1%, and A buys B's 1% thereby eliminating B as an owner. Under Defendant's theory, such a transaction would amount to a transfer under section 19.2(d)(I) because B, who owned the ownership interest as of the effective date of the Agreement, would no longer own any interest in the company. The Court rejects Defendant's strained interpretation of section 19.2(d)(I) as both hyper-technical and inconsistent with the overall purpose of section 19.2. A more reasonable and accurate interpretation of section 19.2(d)(I) compels a conclusion that transfers *strictly* between original owners would never amount to a transfer under 19.2(d)(I) because the remaining owners will always maintain an aggregate 67% ownership interest. To the extent that Defendant suggests that transactions among owners should result in a transfer under section 19.2(d), Defendant may properly rely on section 19.2(d)(ii) to cover those possibilities.

Accordingly, the Court concludes that in order to demonstrate a violation of section 19.2(d)(I), there would had to have been a transfer such that the owners at the time of the effective date of the Agreement would no longer own 67% of the company. At the time of the effective date of the Agreement, there were two owners, A (Agemy) who owned 49% and B (Bazzy) who owned 51%. Following A's transfer to B, all 100% ownership in the company was vested in B. Thus, although A was no longer an owner after the transfer, B continued to own at least 67% as required under section 19.2(d)(I). Therefore, Plaintiff did not violate section 19.2(d)(I).

The Court further concludes that Plaintiff did not violate section 19.2(d)(ii) of the Agreement.

In order to violate section 19.2(d)(ii), there would had to have been a transfer of interest (even if among the present owners) of at least 50% or more. In this case, Agemy, whose interest was transferred to Bazzy, owned only 49% of O.J. Distributing. Thus, there was no transfer under section 19.2(d)(ii).

Finally, Defendant contends that Agemy's transfer of his 49% interest to Bazzy constitutes a "change in Control" under section 19.2(d)(iii) where control is further defined under section 2.2 of the Agreement as "the ability (whether or not exerted) to direct or substantially influence the business affairs of a person or entity regardless of the actual percentage ownership in the entity." (Section 2.2 of the Agreement). The extent to which Agemy had the ability to substantially influence the business affairs presents a question of fact not appropriate for summary judgment. Accordingly, Defendant has failed to demonstrate to this Court that there is no genuine issue of material fact as to whether Plaintiff violated section 19.2 of the Agreement.

Defendant also maintains that Plaintiff violated the non-compete clause of the Agreement by distributing products competitive to Defendant's Arizona beverage line. Section 2.2 of the Agreement provides:

> Distributor shall not directly, or indirectly, including through any Affiliate, produce, promote, advertise, distribute, sell or offer for sale, directly or indirectly, without the prior written consent of the Manufacturer, any item (a) of the same or similar type and/or flavor, if applicable, as any of the Products such that any such item may be competitive with any of the Products, as determined in good faith by the Manufacturer; [] Attached hereto as Schedule C is a list of all items presently sold or offered for sale by Distributor or any Affiliate of Distributor.

(Plaintiff's Exhibit 5, pg. 2-3). Schedule A-2 indicates that "Arizona has approved O.J. Distributing to carry Everfresh juice and related products." (Schedule A-2 attached to the Agreement). The Agreement is silent as to the meaning of the "related products" provision found in Schedule A-2. During the hearing on the matter, the parties disagreed as to the interpretation of the "related products" provision of the

-7-

Agreement. Thus, although the evidence suggests that Plaintiff may have been distributing products other than Arizona beverages, it is possible that some or all of those products fall within the "related products" provision of the Agreement.

Furthermore, the Agreement also allowed Plaintiff to continue distributing the products it distributed prior to the effective date of its Agreement with Defendant. Schedule C was supposed to contain a list of the items that Plaintiff distributed prior to the Agreement and which products Plaintiff was permitted to distribute after the effective date of the Agreement. Schedule C refers to an attachment that neither party could locate or produce. This "attachment" referred to in Schedule C is crucial to the question of whether Plaintiff distributed, without Defendant's permission, products competitive to Arizona beverages. Without this information, the Court cannot conclude, as a matter of law, that Plaintiff violated section 2.2 of the Agreement. Therefore, there is a genuine issue of material fact as to whether Plaintiff violated section 2.2 of the Agreement and whether Defendant had cause to terminate the Agreement.

Defendant contends, however, that even if it terminated the agreement without cause, Plaintiff failed to comply with the post-termination terms of the Agreement thereby precluding an award of damages. Specifically, Defendant argues that Plaintiff was required to provide certain sales and customer information following a termination of the Agreement. Plaintiff contends that it complied with the post-termination terms of the Agreement by transmitting the required information to Defendant via facsimile (Plaintiff's Exhibits 9 & 11). Therefore, even if Defendant terminated the Agreement without cause, there is a factual dispute over whether Plaintiff complied with the post termination requirements under the Agreement.

The Court also rejects Defendant's final argument in support of its Motion for Summary Judgment based on the contractual limitations period for filing a federal action. While acknowledging

that the issue was previously addressed by the Court, Defendant asserts that "[n]either this Court nor the Court of Appeals had the benefit of the factual development which has since evolved" (Defendant's Motion for Summary Judgment, pg. 14). This issue was conclusively decided and ruled on by Judge Hood in her Order dated September 30, 2004.

Generally, the law-of-the-case doctrine states that a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation. Although a court has the power to revisit prior decisions of its own or of a coordinate court, as a rule courts should be loathe to do so in the absence of extraordinary circumstances. Issues, once decided, should be reopened only in limited circumstances, e.g., where there is substantially different evidence raised on subsequent trial; a subsequent contrary view of the law by the controlling authority; or a clearly erroneous decision which would work a manifest injustice. This doctrine applies whether the issue was decided "explicitly or by necessary inference from the disposition." *Coal resources, Inc. v. Gulf & Western Indus., Inc.*, 865 F.2d 761, 766 (6th Cir. 1989). *See also Johns-Manville Corp. v. Guardian Indus. Corp.,* 116 F.R.D. 97, 101 (E.D. Mich 1987) (the law of the case doctrine "precludes a court from re-examining an issue previously decided by itself or a higher court.").

Here, the Court is not convinced that Defendant has demonstrated such extraordinary grounds to warrant revisiting Judge Hood's decision as to the contractual limitations period. The Sixth Circuit discussed at great length the facts surrounding the application of the limitations period under the Agreement. Defendant fails to specifically identify how the facts have evolved such that the Court should reconsider this issue. Therefore, the Court rejects Defendant's assertions that Plaintiff's contract claims are time barred under the terms of the Agreement.

Accordingly, the Court recommends that Defendant's Motion for Summary Judgment be **DENIED**.

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge. Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.

Dated: May 26, 2005                s/ Mona K Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE

**Proof of Service**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: May 26, 2005                s/ Lisa C. Bartlett
                                   Courtroom Deputy