UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

O.J. DISTRIBUTING, INC.,

    Plaintiff,

                                Case No. 98-71940

v.

                                HONORABLE DENISE PAGE HOOD

HORNELL BREWING CO., INC.,
a/k/a/ ARIZONA BEVERAGES,

    Defendant.
_____/

MEMORANDUM OPINION & ORDER ACCEPTING
REPORT AND RECOMMENDATION AND
<u>NOTICE OF FINAL PRE-TRIAL CONFERENCE</u>

**I.**     **INTRODUCTION**

Plaintiff O.J. Distributing, Inc. filed suit against Defendant Hornell Brewing Co., Inc. alleging breach of a distributing agreement entered into between the parties on September 16, 1995. Defendant filed a Motion for Summary Judgment on March 7, 2005. This Court referred Defendant's Motion to Magistrate Judge Mona K. Majzoub on April 21, 2005.

This matter is presently before the Court on Magistrate Judge Majzoub's Report and Recommendation dated May 26, 2005. The Magistrate Judge recommends this Court deny Defendant's Motion for Summary Judgment because a number of genuine issues of material fact remain. Defendant filed Rule 72 Objections to the Magistrate Judge's Report and Recommendation on June 10, 2005. For the reasons set forth below, the Court accepts and adopts the Magistrate Judge's Report, and denies Defendant's Motion for Summary Judgment and Objections.

**II.**     **STATEMENT OF FACTS**

Both the procedural and substantive facts of this case have been set forth at length in both the Magistrate Judge's Report and Recommendation and this Court's September 30, 2004 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss.

### III.  STANDARD OF REVIEW

#### A.  Reports and Recommendations

The standard of review to be employed by the Court when examining a Report and Recommendation is set forth in 28 U.S.C. § 636.  This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  This Court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate."  Id.

In order to have preserved his right to appeal the Magistrate Judge's recommendation, Plaintiff was obligated to file objections to the Report and Recommendation within ten days of service of a copy, as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections may constitute a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

#### B.  Summary Judgment

The procedure for considering whether summary judgment is appropriate is found in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes*

*v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); see also, *Matsushia Electronic Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

The United States Court of Appeals for the Sixth Circuit has recognized that *Liberty Lobby*, *Celotex*, and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identifies a number of important principles in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id*. at 1479.

In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Id*. (quoting *Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a mere scintilla of evidence in order to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "show that there is some metaphysical doubt as to the material facts." *Id*. (quoting *Matsushita*, 475 U.S. at 586). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id*. The nonmoving party has an affirmative duty to direct the court's attention to those specific portions of

3

the records upon which it seeks to rely on to create a genuine issue of material fact.

## IV. LAW & ANALYSIS

The Magistrate Judge recommended Defendant's Motion for Summary Judgment be denied because genuine issues of material facts remain to be resolved. Defendant moved for summary judgment on four separate bases, alleging: (1) Plaintiff breached the distribution agreement; (2) Plaintiff has no claim to a no cause payment; (3) the distribution agreement bars the recovery of damages; and (4) Plaintiff's claims are time-barred. The Court agrees with the Magistrate Judge's view that genuine issues of material fact remain with respect to each of the above-asserted claims for summary judgment.

### A. Breach of the Distribution Agreement

Defendant alleged Plaintiff violated the distribution agreement in two ways. First, Defendant alleges Plaintiff breached the prohibition against assignment clause of the agreement. Second, Defendant maintains Plaintiff sold competing products despite a non-compete clause found in the agreement. The absence of a genuine issue of material fact with respect to either of these alleged violations would warrant the entry of summary judgment in Defendant's favor. The Court finds that a genuine issue of material fact exists in both instances, making summary judgment based on Plaintiff's alleged breach of the distribution agreement inappropriate.

#### i. The Assignment Clause

Section 19.1 and 19.2 of the distribution agreement provide the following:

19.1 Distributor shall not transfer any of its rights or obligations under this Agreement without the prior written consent of Manufacturer, which consent may be withheld by Manufacturer in its sole discretion, it being understood that Manufacturer has a legitimate interest in the identity, qualifications, financial and marketing strength, etc., of its distributors.
19.2 For the purposes hereof, a transfer shall be deemed to include . . . (d) a transfer

4

> of any ownership interests in, affecting, or respecting the Distributor by reason of which (i) the persons owning the ownership interests of Distributor on the date hereof would own less than 67% of the aggregate ownership interests of the Distributor, or (ii) following the date hereof there shall have been transfers of ownership interests (even if among the present owners) representing more than 50% of the aggregate ownership interests of Distributor, or (iii) there shall have been a change in Control from that existing on the date hereof.  Attached hereto as Schedule F is a list of all of the present owners or ownership interests in Distributor, together with the amount of their respective ownership interests.  Without limiting the prohibition set forth herein, but instead to assure the Distributor's compliance with the provisions hereof, the Distributor shall notify the Manufacturer in writing of any anticipated changes in ownership interests applicable to Distributor . . . .

Section 2.2 of the distribution agreement further defines a "change in Control" as used in section 19.2(d)(iii) above.  Section 2.2 defines control as, "the ability (whether or not exerted) to direct or substantially influence the business affairs of a person or entity regardless of the actual percentage ownership in the entity."

The Magistrate Judge concluded that section 19.2(d)(i) of the distribution agreement was not violated because, following the sale of the 49 percent interest in Plaintiff, "all 100% ownership in the company was vested in" the original 51 percent holder.  (Rep. and Recommendation at 6.)  The Magistrate Judge further found that Plaintiff had not violated section 19.2(d)(ii) of the distribution agreement.  (Id. at 6–7.)  Finally, the Magistrate Judge concluded that section 19.2(d)(iii) of the distribution agreement had not been violated by Plaintiff.  (Id.)

In its Objections, Defendant contests the Magistrate Judge's finding that Plaintiff did not violate section 19.2(d)(iii) of the distribution agreement.  Defendant notes that Plaintiff was held by a "control group comprised of Meslem Bazzy and Alan Agemy, who owned 51% and 49%, respectively."  (Def.'s Obj. at 4.)  Defendant cites testimony from Bazzy indicating that it was Agemy who was responsible for Plaintiff's operations, sales, and marketing.  (Id.)  Defendant then concludes with the assertion that Plaintiff "virtually concedes that a change of control occurred when

it states that Mr. Bazzy and his son were taking over control of OJ as a result of the Agemy buyout." (Id. at 5) (internal quotation and citation omitted).

This Court agrees with the Magistrate Judge's determination regarding section 19.2(d)(i) of the distribution agreement. It is plain that the transfer maintained the minimum 67 percent ownership interest by the original owners as required by the distribution agreement. With respect to the Magistrate Judge's finding that section 19.2(d)(ii) was not violated, the Court holds that finding to be correct. The transfer here at issue involved less than a 50 percent stake, therefore section 19.2(d)(ii) is not applicable.

Though the Magistrate Judge does not specify with great detail her reasons for finding a genuine issue of material fact remains as to whether Plaintiff violated section 19.2(d)(iii) of the distribution agreement, this Court also agrees with that portion of the Report. As Plaintiff alleges in its Response to Motion for Summary Judgment,

> Arizona [Defendant] was fully aware of the interaction of Meslem Bazzy with O.J. and the formation of the distributor relationship, including his role in securing financing, infrastructure, and accounts which benefitted the parties [sic] relationship. Arizona [Defendant] was fully aware of his interest in O.J., and was fully aware of he, and his son Ali Bazzy, taking over control of O.J. The course of dealing between Arizona [Defenant] and O.J. was predominantly completed through the Bazzy's, and the stacks of documentation existing in support of this action shows that Arizona [Defendant] maintained an active recognition of Mr. Bazzy's interest and activity in the company and distributor relationship. Arizona [Defendant] now argues that something was hidden from them that justify's [sic] their originally flawed notice of termination into a for cause termination.

(Pl.'s Resp. to Mot. for Summ. J. at 10.) The Court finds the extent to which Defendant was actually aware of the change in control remains a genuine issue of material fact. Moreover, the question of whether Defendant assented to such a change in control also remains to be decided.

    **ii.**    **The Non-Compete Clause**

Defendant seeks summary judgment based on the alleged breach of the non-compete clause found in the distribution agreement. Section 2.2 of the agreement provides the following:

> Distributor shall not directly, or indirectly, including through any Affiliate, produce, promote, advertise, distribute, sell or offer for sale, directly or indirectly, without the prior written consent of the Manufacturer, any item (a) of the same or similar type and / or flavor, if applicable, as any of the Products such that any such item may be competitive with any of the Products, as determined in good faith by the Manufacturer; []Attached hereto as Schedule C is a list of all items presently sold or offered for sale by Distributor or any Affiliate of Distributor.

Schedule A-2 states, "Arizona has approved O.J. Distributing to carry Everfresh juice and related products." The phrase "related product" is not defined elsewhere in the distribution agreement.

In recommending the denial of summary judgment in Defendant's favor based on a purported violation of the non-compete clause, the Magistrate Judge noted a disagreement between the Parties as to the definition of "related products." (Rep. and Recommendation at 8) ("although the evidence suggests that Plaintiff may have been distributing products other than Arizona beverages, it is possible that some or all of those products fall within the 'related products' provision of the Agreement."). The Magistrate Judge also based her conclusion on the existence of a genuine issue of material fact as to whether Defendant had prior knowledge or had previously assented to the sale of other products by Plaintiff. (Id.)

Defendant's Objection focuses on whether Plaintiff could plausibly term the other products it sold "related products" of Everfresh juice. (Def.'s Obj. at 6–8.) Defendant forcefully argues that the other products sold by Plaintiff cannot possibly be considered "related products" of Everfresh juice. Regarding previous authorization to sell other products, Defendant simply focuses on the lack of an attachment referred to in Schedule C.

The Court rejects Defendant's argument that because no attachment to Schedule C was ever

generated, no genuine issue of material fact exists regarding Plaintiff's alleged violation of the non-compete clause. As the Magistrate Judge notes, "[t]his 'attachment' referred to in Schedule C is crucial to the question of whether Plaintiff distributed, without Defendant's permission, products competitive to Arizona beverages." (Rep. and Recommendation at 8.) Even in the absence of any attachment, the question of whether Defendant knew about and consent to Plaintiff's sale of other products remains.

### B. No Cause Payment and the Recovery of Damages

Defendant contends Plaintiff is not entitled to recover any damages even if Defendant is held to have improperly terminated the distribution agreement because Plaintiff allegedly failed to comply with the post-termination terms of the agreement. More specifically, Defendant asserts Plaintiff did not provide particular sales and customer information as required by the distribution agreement following the termination of the agreement. The Magistrate Judge found a genuine issue remains based on Plaintiff's assertion that it did provide the requisite information to Defendant via facsimile. (Rep. and Recommendation at 8.)

In its Objections, Defendant alleges that there is no evidence that the document cited by Plaintiff was ever transmitted to Defendant or any other party. (Def.'s Obj. at 12.) Defendant points to the date listed on the document, October 23, 1997, which was six months after the termination of the distribution agreement. The agreement required such information to be transmitted "immediately"; Defendant argues that, even assuming Plaintiff sent a facsimile, it was untimely. The Court does not agree with Defendant's assertion that six months after the actual date of termination cannot be deemed immediate pursuant to the distribution agreement. There are ample statements in prior opinions of this Court and the Sixth Circuit Court of Appeals that Defendant's

benchmark for the termination of the distribution agreement is inaccurate. (See, e.g., Pl.'s Resp. at 13–14.) This Court agrees with the Magistrate Judge that a genuine issue of material fact still exists regarding: (a) whether Plaintiff complied with the post-termination provisions; and (b) whether the compliance, if any, was timely.

### C. Time-Bar

Defendant's final argument in support of its Motion for Summary Judgment is based on the contractual limitations period for filing a federal action. The Magistrate Judge cited the law-of-the-case doctrine in concluding that "Defendant has not demonstrated such extraordinary grounds to warrant revisiting Judge Hood's decision as to the contractual limitations period." (Rep. and Recommendation at 9.) In addition, the Magistrate Judge noted, "[t]he Sixth Circuit discussed at great length the facts surrounding the application of the limitations period under the Agreement." (Id.)

Defendant objects to this portion of the Report and Recommendation, claiming it is an error to hold that the prior decisions of this Court and the Sixth Circuit "preclude[] consideration of this aspect of" Defendant's Motion for Summary Judgment. (Def.'s Obj. at 9.) The Court finds Defendant's Objection to be based on an improper reading of the Report and Recommendation. In discussing the law-of-the-case doctrine at length, the Magistrate Judge did not state that the doctrine bars, precludes, or prevents this Court from considering this issue. The Magistrate Judge carefully delineated the particular circumstances upon which prior decisions may be revisited. The Magistrate Judge simply concluded that Defendant had not demonstrated sufficient cause to warrant such a revisiting by this Court. (Report and Recommendation at 9.) This conclusion was proper.

### V. CONCLUSION

Because genuine issues of material fact remain, Defendant's Motion for Summary Judgment is denied.

Accordingly,

IT IS ORDERED that Magistrate Judge Mona K. Majzoub's Report and Recommendation **[Docket No. 73, filed May 26, 2005]** is ACCEPTED and ADOPTED as this Court's findings and conclusions of law.

IT IS FURTHER ORDERED that Defendant's Rule 72 Objections **[Docket No. 74, filed June 10, 2005]** are DENIED. .

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment **[Docket No. 65, filed March 7, 2005]** is DENIED.

IT IS FURTHER ORDERED that the Parties shall file their Proposed Joint Final Pretrial Order by Tuesday, September 6, 2005. The Parties shall appear for a Final Pretrial Conference on Monday, September 12, 2005, at 4:15 p.m. The trial date remains Thursday, September 15, 2005, at 9:00 a.m.

    /s/ Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED: August 23, 2005